UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Apartment Investment and Management Company, | § § § | |
| Plaintiff, | § § § | |
| versus | § § | Civil Action H-07-3476 |
| Seacor, Inc., et al., | § § § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.   *Introduction.*

An apartment building and its residents sued the maker of a component, the maker of equipment that included it, and the reseller for their injuries. Because they cannot prove that the resident's product had the defective component, they will lose.

2.   *Background.*

In September and November of 1999, Airsep Corporation notified its customers of a voluntary recall for an oxygen concentrator. The concentrator had a plastic capacitor that was manufactured by ICAR, SpA, and distributed domestically by Seacor, Inc. Airsep recalled the concentrator because the plastic capacitor may have been a fire hazard. Airsep recommended replacing the plastic capacitor with a metal one.

Memorial Hermann Hospital System sold the end-product – the concentrator. After being notified of the recall, Memorial's repairman, Stewart Stanfield, retrofitted the Airsep's concentrators in its inventory with a metal capacitor. Stanfield testified that after he replaced the plastic capacitors on February 4, 2000, he noted the replacement on a master list.

In May, four months later, Virginia Shelton rented a concentrator from Memorial for use at her apartment in Copperwood – a subdivision of the Woodlands section of Houston, and owned by Apartment Investment and Management Company. On August 2, 2005, Shelton's apartment caught on fire, and she says she reported to the 911 operator that the smoke was

coming from her concentrator.  In the fire, one resident died, several were injured, and $2 million worth of property was damaged.

3.      *History.*

In November of 2005, Shelton, another resident, and the building sued Airsep and Memorial in a state court in Harris.  That case settled in mediation the following year.

In Montgomery – a different county and a year later – Shelton and twenty-five residents sued Airsep and Memorial (case 07-02-1989-cv).  Memorial added ICAR and Seacor as third-party defendants, and the case is still pending.

In July of 2007, the building sued ICAR and Seacor in Montgomery county, and the residents intervened (case 07-07-7790-cv).  ICAR removed it and added Airsep and Memorial as third-party defendants.  The building and others have since dismissed Seacor with prejudice.

Memorial, Airsep, and ICAR moved for summary judgment because the plaintiffs cannot identify the kind of capacitor that Shelton had rented from Memorial. The plaintiffs respond that because a component was never recovered from the fire, Shelton's must have been plastic; they infer that because plastic burns while metal does not.

4.      *Experts.*

Because a capacitor – neither plastic nor metal – was recovered after the fire, the plaintiffs have no physical evidence of the product.  They choose to rely on experts who cannot substantiate their case.

An expert is preliminarily qualified if his education and knowledge are suited for the case. An expert's report is only admissible if it rested on a reliable foundation and was relevant to the facts.  To be reliable, the expert must rely on actual facts – those known in the case and those known scientifically.  To be relevant, the expert must rigorously apply accepted scientific principles to the facts in arriving at his conclusions.      *See Daubert, et al., v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

The plaintiffs retained Roger Owens as an expert to examine the fire and heat patterns of the concentrator.  Owens concluded that the fire started at the concentrator; Memorial and Airsep did not adequately inspect or repair despite the recall; and, the concentrator was defective because of the plastic capacitor.  Yet, Owens never explained the bases for his conclusions. Instead, he asserts that Memorial must have been grossly negligent because it did

not have a document reflecting that the capacitor had been replaced. Owens also claims Airsep was necessarily negligent because it did not test the concentrator for a fire hazard.

His report is inadmissible under *Daubert*. Owens never relied on actual facts because he had nothing to examine. A capacitor was never recovered. He also did not have a single scientific principle in his report, only legal theories and speculation. His deposition is likewise inadmissible because Owens testified beyond the scope of his report. Owens infers that a metal capacitor had not been installed because a glob of melted metal was not recovered. Owens says that if the capacitor had a metal case, the aluminum would have melted whereas plastic would have burned. (Roger Owens Dep. 165: 17-18, November 2, 2006.) When asked if a steel bracket – that had encased the plastic capacitor – would have survived like metal, Owens answers in the affirmative while also confirming that a steel bracket was never recovered. *Id.* at 166: 1-9.

Another expert, Mark Wagonhoffer, inspected which electrical components had caused the fire. He testified he could not determine whether the capacitor was plastic or metal. (Mark Wagonhoffer Dep. 35: 2-5, 13-20, November 16, 2006.) He admitted that he only knew that the concentrator had caused the fire because he had listened to Shelton's testimony. He also said because Memorial could not find its master list, it must have not replaced the capacitor. *Id.* at 35: 7-11, 24-25. A lack of master list is not evidence for either party.

The plaintiffs' other expert, Darold Bittick, also could not identify the origin of the fire. Because as he said, the capacitor was "not there to examine." (Darold Bittick Dep. 105: 25, November 17, 2006.)

None of the experts has offered facts – aside from speculation – to contradict Stanfield's testimony that he replaced the capacitor.

5.    *Stanfield's Credibility.*

The plaintiffs say that because Stanfield cannot remember that he replaced Shelton's capacitor in particular, he did not change it. No person can remember a single detail from six years ago let alone last week. Stanfield's lack of memory of changing Shelton's particular unit hardly undermines his credibility.

The plaintiffs also demand to see the "master list" where Stanfield said he had recorded the replacement. Because Memorial could not find its master list, the plaintiffs assume that the list never existed or that Memorial shredded it in anticipation of litigation. This assertion of spoilation is just mean imagining. Imperfect record-keeping is human. After three separate

- 3 -

lawsuits about the Copperwood fire, the plaintiffs have the documents they need to substantiate their suits.

6.      *Delivery Trucks.*

The plaintiffs say that because at least two dozen concentrators were stored on Memorial's delivery trucks, Stanfield did not replace all 223 capacitors in inventory.   Even if this were true, it would mean that ten percent of Memorial's capacitors had not been replaced. Their abstraction hardly weighs in their favor; this ratio only illustrates that the plaintiffs cannot meet their burden that it was more likely that the capacitors had been replaced than not.

Plaintiffs' request to depose the driver of the truck, Robert Haynes, who delivered the concentrator to Shelton in 2000, is also futile. That driver's job was to deliver the concentrators, not to inspect the component within the final product.   Haynes did not work at Memorial during the recall and left the company within a year.  In essence, he would know less than Stanfield.

7.      *Identification.*

To prevail on a products-liability action, the plaintiffs must identify that Shelton's concentrator had a plastic capacitor.  They must specifically tie Shelton's product to that of the defendants.  The plaintiffs cannot show that a plastic capacitor was in the Airsep concentrator when Shelton's apartment burned. *See Bell Helicopter Co. v. Bradshaw*, 594 S.W. 519, 529 (Tex. Civ. App. El Paso, 1979) (seller's duty is limited to a specific product in its condition).

Because the plaintiffs did not prove that plastic capacitor was in the concentrator at the time of the fire or that it created the fire, they cannot establish causation.  Without causation, they may not prevail on negligence or strict liability.  *See Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 710 (Tex. 2003) (negligence); *Hernandez v. Tokai Corp.*, 2 S.W.3d 256-57 (Tex. 1999) (strict liability for design defect); *Torrington v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000) (strict liability for manufacturing defect).

- 5 -

8.    *Conclusion.*

Because the plaintiffs did not identify that Shelton's product was that of the defendants, they will take nothing from Seacor, Inc., ICAR, SpA, Memorial Hermann Hospital System, and Airsep Corporation.


Signed on October 22, 2008, at Houston, Texas.


Lynn N. Hughes    USDJ
United States District Judge